# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5635<br>00 C 6033 | **DATE** | November 15, 2001 |
| **CASE TITLE** | | Acuna and Ramos v. Rudzinski | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiffs' motion for protective order [ ] is denied. Defendants' motion for protective order [ ] is granted in part to the extent that: (1) Plaintiffs are permitted to use the CR files for purposes of this case and for no other purpose, and to disclose the contents of those files to persons associated with the prosecution of this case (such as experts and paralegals) but to no other persons; and (2) at the conclusion of this case, plaintiffs shall return all copies of the CR files to the City of Chicago. **ENTER MEMORANDUM OPINION.**

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | **Document Number** |
| | No notices required. | | | | |
| x | Notices FAXED/MAILED by judge's staff. | | | NOV 19 2001 | |
| | Notified counsel by telephone. | | | date docketed | 24 |
| | Docketing to mail notices. | | | NOV 19 2001 | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to _____ | | | | |
| KAM | courtroom deputy's initials | | FILED FOR<br>01 NOV 16 | date mailed notice<br>KAM | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |
| | | | (Reserved for use by the Court) | | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| GONZALO ACUNA and DELILAH RAMOS, | ) |
| Plaintiffs, | ) |
| v. | ) No. 00 C 5635 |
| CHICAGO POLICE OFFICERS ERIC RUDZINSKI, D. BURKE, J. RIVERA, ET AL. | ) |
| Defendants. | ) |
| | ) |
| | ) NOV 19 2001 |
| BENJAMIN ACUNA, | ) |
| Plaintiff, | ) |
| v. | ) No. 00 C 6033 |
| CHICAGO POLICE OFFICERS ERIC RUDZINSKI, JAMES STAGEN AND THE CITY OF CHICAGO, | ) |
| Defendants. | ) |

### MEMORANDUM OPINION

In these consolidated cases brought under 42 U.S.C. § 1983, plaintiffs complain of injuries arising out of an incident that occurred in Chicago on October 3, 1998. They allege that they were assaulted without provocation and falsely arrested by the defendant police officers and then maliciously prosecuted on false charges of having assaulted and attempted to murder the officers. The plaintiffs Gonzalo Acuna and Benjamin Acuna each spent two years in custody awaiting trial. They were acquitted of the charges.

The complaint of Benjamin Acuna contains a <u>Monell</u> claim against the City of Chicago.[1]

When a complaint is made against a police officer, the City prepares a file into which it places the various papers pertaining to the investigation and disposition of the complaint. Such a file is referred to as a complaint register file, or "CR file." In § 1983 cases filed against Chicago police officers, it is customary for the City to produce in discovery copies of any CRs relating to similar complaints that have been made against the defendant officers. The relevance of the CRs would be that the prior incidents might be admissible against the individual defendants under Evidence Rule 404(b) and against the City on a <u>Monell</u> theory.

A CR involving a charge of a completely different kind of misconduct than alleged against the officer in the federal complaint would ordinarily be irrelevant for any purpose, and its production in discovery would not be compelled. In several cases over the years, this court has been asked to decide whether particular CRs were sufficiently similar to the misconduct charged in the complaint that production should be required. Often, however, there is no disagreement, and copies of the relevant CRs are produced without the need for a motion to compel. In some, if

---

[1] See <u>Monell v. Department of Soc. Servs.</u>, 436 U.S. 658 (1978). The claim is that it is the City's policy and practice to ignore misconduct of this kind by its police officers, which encouraged the individual defendants to believe that they could commit the acts in question without fear of disciplinary action.

not most instances, the parties ask the court to enter a protective

order governing the use of the materials produced. Prior to the

instant case, we do not recall being asked to resolve a dispute

concerning the terms of a protective order. Such a request has now

been made and is the subject of this opinion. Each side has

submitted a protective order which it contends is the "standard"

order the various judges of this district have been entering. The

competing versions are different in two major respects.

First, the plaintiffs' version would permit disclosure of the

CRs, including identifying information concerning the complainants

and complainants' witnesses, to attorneys in other pending or

prospective civil cases, and to attorneys in criminal cases,

provided the attorneys signed affidavits agreeing to be bound by

the terms of the protective order.

Defendants' proposed protective order, on the other hand,

would restrict the use of the CRs to this case and bar the use of

the information for any other purpose.

A second difference between the two proposed orders is related

to the first. Plaintiffs wish to retain the copies of the CRs upon

the conclusion of this case, whereas defendants would require that

all copies be returned to the City.

The situation of the parties is complicated somewhat by the

fact that defendants have voluntarily produced copies of all CRs

relating to the defendant officers, not just CRs involving

complaints of misconduct similar to that alleged in this case. Thus, plaintiffs' counsel are in possession not only of CRs which are relevant to the case, but also of CRs that are probably irrelevant and would not be admissible on any theory. Defendants' counsel explained this broad production as being more economical than spending the time that would have been required to determine the relevancy of each particular CR.

Defendants have not objected to plaintiffs' attorneys making efforts to interview the persons who made the prior complaints against the officer defendants. The court specifically gave plaintiffs' counsel permission to make such efforts, and we assume some interviews are taking place. This is an appropriate use of the information in the CRs. We instructed counsel, however, not to disclose to anyone outside this case the names or addresses of the complainants in these prior incidents.

## Discussion

The two disputed issues seem to conflate into one. If plaintiffs' use of the CRs is properly limited to this case, then obviously the files should be returned at the conclusion of the case. Our discussion, therefore, will center on the question of whether plaintiffs' counsel should be permitted to use or disclose the CR materials beyond the needs of this particular case.

Little guidance would be gained from a determination of which of these proposed orders is more frequently used in this kind of

case.  Most protective orders are prepared by the parties and submitted by agreement.  There are better uses of a judge's time than to review every line of an agreed protective order, and it would be fanciful to assume that a majority of the judges of this court have studied the matter and come to a considered judgment that this or that form of protective order should be the "standard" in this type of case.

Each of the proposed orders submitted in this case is long and, we think, needlessly detailed and complex.[2]  As will appear at the end of this opinion, a much shorter order, addressing the single issue in dispute, should be sufficient.

## A.  Plaintiffs' Public Record Argument

It is the position of plaintiffs' attorneys that, with limited exceptions not applicable here, materials produced by the other side in discovery are matters of public record.  Therefore, they argue, the parties to the case have a right to disclose the materials.  In particular, they contend that they have a right to disclose the CR materials to attorneys who are defending criminal cases in which any kind of police misconduct might be an issue and to attorneys who are prosecuting or might contemplate filing other civil cases alleging misconduct by any Chicago police officers. The attorneys regard any interference with this right as an

----

[2] Plaintiffs' proposed order, and the related "affidavit" other attorneys would sign in order to obtain the discovery materials, is not easy to follow, and we are not sure we understand it.  Attorneys who might sign the affidavits could have the same problem.

unjustified attempt to place a "gag" on their ability to communicate important, non-privileged information to other attorneys.

Plaintiffs refer us to several Seventh Circuit cases that they believe support the general proposition that discovery materials are matters of public record and that any restriction on their dissemination can be justified only by a persuasive showing of the need for confidentiality. We think plaintiffs interpret the cases too broadly. None of them dealt with discovery materials. All of them were concerned with efforts to seal judicial orders, opinions, briefs or materials relied on by a judge in reaching a decision.

In <u>Pepsico, Inc. v. Redmond</u>, 46 F.3d 29 (7th Cir. 1995), the Court held that it would be improper for a district judge to seal his opinion, or any portion of it, in order to protect trade secrets. Instead, the opinion should be written in a way that does not disclose the trade secrets. The secrets themselves can be kept under seal, and the judge's opinion can refer to them indirectly in a manner that will avoid disclosure. The opinion itself must be public:

> Holding trade secrets in confidence is one thing, holding entire judicial proceedings in confidence quite another. Opinions are not the litigants' property. They belong to the public, which underwrites the judicial system that produces them.

<u>Id.</u> at 31.

<u>Matter of Krynicki</u>, 983 F.2d 74, addressed a request by the parties to an appeal to file their briefs under seal. The Court found that no persuasive reason had been given for such an extraordinary request and denied it:

> What happens in the halls of government is presumptively open to public scrutiny. Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat; this requires rigorous justification.

<u>Id.</u> at 75.

In <u>Union Oil Co. v. Leavell</u>, 220 F.3d 562 (7th Cir. 2000), the Court remanded the case with directions to the district court to dissolve the confidentiality orders it had entered at the request of the parties. Virtually everything had been sealed:

> As far as we can tell, the district court has kept not only the details but also the <u>existence</u> of this case from public view.

<u>Id.</u> at 567 (emphasis added).

In <u>Citizens First National Bank v. Cincinnati Insurance Co.</u>, 178 F.3d 943 (7th Cir. 1999), the Court held invalid a district court protective order that allowed the parties to determine for themselves what portions of the record to designate as confidential. "The parties to a lawsuit are not the only people who have a legitimate interest in the record compiled in a legal proceeding." <u>Id.</u> at 944.

In <u>Matter of Continental Illinois Securities Litigation</u>, 732 F.2d 1302 (7th Cir. 1984), the Court held that there was no justification for excluding public access to a report relied upon by the trial court in reaching its decision. The Court noted the importance of "the public's right to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system." <u>Id.</u> at 1308.

These decisions of the Seventh Circuit obviously provide no support for plaintiffs' claim of a right to disseminate the information in the CR files. The CRs are not records of this court, nor do they reflect the arguments made to or the decisions made by this court. They are simply discovery materials. They contain the names and addresses of the complaining witnesses and the details of the prior complaints against the defendants. This is the information the plaintiffs' counsel desire to disclose to attorneys in other civil and criminal cases. There could be circumstances justifying such disclosure. If any of the CR complainants should become a witness in this case, his or her testimony would then become part of the public record. The same would be true if, for example, this court should rely upon the affidavit of such a person in ruling on a dispositive motion. As the Court observed in <u>Union Oil</u>, <u>supra</u>:

> Much of what passes between the parties remains out of public sight because discovery materials are not filed with the court. But most portions of discovery <u>that are filed and form the basis of judicial action</u> must

> eventually be released, and it should go without saying
> that the judge's opinions and orders belong in the public
> domain.

220 F.3d at 568 (emphasis added) (citation omitted).

In arguing that there is a public right of access to discovery

materials, plaintiffs do not discuss the case of Seattle Times Co.

v. Rhinehart, 467 U.S. 20 (1984). That case held that it was not

a violation of the First Amendment for a Washington state court to

enter a protective order barring public disclosure of identifying

information concerning donors and members of a foundation that was

one of the parties to the case. Referring to the Washington

discovery rules, the Court noted:

> Liberal discovery is provided for the sole purpose of
> assisting in the preparation and trial, or the
> settlement, of litigated disputes. Because of the
> liberality of pretrial discovery permitted by [the state
> rules], it is necessary for the trial court to have the
> authority to issue protective orders conferred by [the
> rules]. It is clear from experience that pretrial
> discovery by depositions and interrogatories has a
> significant potential for abuse. This abuse is not
> limited to matters of delay and expense; discovery also
> may seriously implicate privacy interests of litigants
> and third parties.
>
> . . .
>
> There is an opportunity, therefore, for litigants to
> obtain — incidentally or purposefully — information that
> not only is irrelevant but if publicly released could be
> damaging to reputation and privacy. The government
> clearly has a substantial interest in preventing this
> sort of abuse of its processes.

_Id._ at 34-35. The Court concluded that the protective order barring public disclosure of the information obtained in discovery did not offend the First Amendment. _See id._ at 37.

Judge Hart of this court cited _Seattle Times_ for the proposition that there is "no right to use pretrial discovery in one case for the prosecution of another case." _Sasu v. Yoshimura_, 147 F.R.D. 173, 176 (N.D. Ill. 1993).

As the Court pointed out in _Seattle Times_, the parties to civil litigation have the right to conduct discovery only by virtue of the discovery rules and court orders necessary to enforce those rules. And the purpose of the discovery is limited. The only basis we are aware of for permitting discovery in federal civil cases is Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides:

> Parties may obtain discovery regarding any matter, not privileged, that is _relevant to the claim or defense of any party_ . . . (emphasis added).

The Rule says nothing about discovery for the purpose of assisting attorneys or parties in other pending cases or for the purpose of collecting information for possible use in cases that might arise in the future.

Aside from the absence of authority for what plaintiffs' counsel wish to do, which alone would warrant an order prohibiting their doing it, there are privacy interests of the CR complainants that weigh heavily against plaintiffs' position. In _Seattle Times_,

the Court was concerned with protecting the privacy interests of foundation members and donors. Here, the intrusion upon the privacy of the CR complainants and witnesses could be at least equally serious. The circumstances that gave rise to the complaints are likely to have been embarrassing to many of the complainants. The alleged misconduct of the officers often occurred in the course of an arrest of the complainant for his or her own misconduct, real or alleged. In making complaints against the officers, it was certainly not within the contemplation of the complainants that they would be laying themselves open to an indefinite number of contacts by attorneys or investigators for private litigants. Defendants argue that plaintiffs' proposed use of the CR materials would have a chilling effect on the filing of complaints by persons aggrieved by police misconduct. Plaintiffs' counsel discount this possibility. But there has been no test of the effects of plaintiffs' proposal. If the kind of disclosure sought here has been permitted in other cases, it is a recent phenomenon whose effects would not yet be fully discernible.

It is impossible to anticipate where the plaintiffs' proposal would lead and what it would mean in terms of embarrassment and inconvenience for the CR complainants and their witnesses. But our inability to foresee the exact consequences is not a reason to permit this radical departure from the traditional use of discovery materials. We believe the protection of the privacy interests of

the CR complainants and their witnesses is a consideration that far
outweighs any interest the plaintiffs in this case may have in the
proposal made by their attorneys.  In fact, plaintiffs' counsel
have not even argued that their clients would derive any benefit
from the disclosure of the CR materials to attorneys in other
cases.  It appears that the real benefit would be to the attorneys
in the other cases, which, as we understand it, would include
present counsel (in other cases they might have) and possibly the
clients in those cases.  But, regardless of what benefit the other
attorneys and clients might derive, there is no basis for entering
an order in one case that would transmit the discovery materials
produced in that case to attorneys in other, completely unrelated
cases.  Plaintiffs' motion for a protective order is therefore
denied.

This, of course, does not mean that attorneys in other cases
will be unable to obtain access to the very CR files that have been
produced here.  All they need to do is demonstrate the relevancy of
the files to the claims of their clients, the same as plaintiffs'
attorneys have done in this case.  If the files are in fact
relevant, the City will probably produce them without a motion to
compel, as it did here.  But the production and use of the files
will take place under the supervision of a judge, who will be
available to enter whatever protective orders might be needed.

- 13 -

Plaintiffs' counsel have argued that disclosing the contents of the CR files to attorneys who might be "preparing" excessive force suits would help those attorneys to decide whether to include a Monell claim. Even if this were true, it is not a legal basis for sharing with other attorneys the discovery provided by the defendants for purposes of this case. But we find the argument unconvincing in any event. If the client has a credible excessive force claim, the attorney can file it, obtain the relevant CR files and, depending upon what they show, add a Monell claim against the City by way of an amendment. There is nothing unusual about that. What is unusual is the idea that an attorney contemplating a suit is entitled to the discovery obtained by other attorneys in an unrelated suit.

Defendants' motion for a protective order will be denied in part because much of it is cumbersome and apparently unnecessary. The parties have been conducting discovery for a considerable time now, without any problems other than this dispute over the CR materials. To resolve that dispute, the defendants' motion for a protective order will be granted in part, to the extent that:

(1) Plaintiffs are permitted to use the CR files for purposes of this case and for no other purpose, and to disclose the contents of those files to persons associated with the prosecution of this case (such as experts and paralegals) but to no other persons; (2)

at the conclusion of this case, plaintiffs shall return all copies

of the CR files to the City of Chicago.


Date:     November 15, 2001


ENTER:    _____

          John F. Grady, United States District Judge